NO. 07-01-0150-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 31, 2001

_____

PATRICK HANG TRAN,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 176TH DISTRICT COURT OF HARRIS COUNTY;

NO. 852,458; HON. BRIAN RAINS, PRESIDING

_____

Before BOYD, C.J., QUINN and JOHNSON, J.J.

Patrick Hang Tran (appellant) appeals his conviction for official oppression. Through one point of error, he contends that the evidence was legally insufficient to support the trial court's finding of guilty. This is allegedly so because the state failed to prove that he was acting under the color of his office or employment and that he denied or impeded the complainant in the exercise and enjoyment of a right or privilege while so acting. We overrule each contention and affirm the judgment.

## Background

Evidence presented at trial illustrates appellant's persistent attempts to contact Iris Gonzalez (Gonzalez), a patient in a restricted access mental facility. On June 27th, 2000 appellant attempted three times to obtain information on Gonzalez from hospital personnel. The first attempt occurred about 8:30 p.m. Appellant, a Houston police officer out of uniform, entered the facility, showed his police badge to Lisa Samuel (the security service officer), and stated that he was a police officer and that he wanted information on Gonzalez. Samuel looked up Gonzalez's information on her computer and noticed that she was listed as a "confidential" patient. The "confidential" designation prohibited Samuel from giving out any data about Gonzalez. Though Samuel subsequently told appellant she had no information about the person he mentioned, appellant stated he knew she was in the hospital and attempted to view the computer screen. At that point, Samuel cleared the screen.

Appellant's second attempt occurred minutes later at another of the facility's buildings. There, he approached Kimberly Pencak (the security service officer on duty), flashed his badge within two or three inches from her face, and stated that he was a Houston police officer and that he needed information on patient Gonzalez. When Pencak looked up Gonzalez's information, appellant attempted to look at her computer screen by going around her desk. She quickly cleared the screen preventing appellant from doing so. So too did she tell him that she had no patient by the name of Iris Gonzalez and that he was welcome to use the courtesy phone to call one of the family members. Appellant then left.

2

His third attempt on June 27th came minutes later at another locale within the facility. Marisol Pena testified that she saw appellant "[come] in through the doors, [go] past me towards the elevator." She asked him if she could help him and "he [came] around my desk and he [pulled] out a badge and he [said] H.P.D. and [put] it back in his pocket." So too did he state that he was looking for patient Gonzalez. After looking up Gonzalez's information, Pena asked appellant if had a six digit code which would have allowed him access to Gonzalez. After stating that he did not, appellant left.

Appellant's final attempt came on the morning of June 28, 2000. And, much like his third attempt, he walked past the security service officer to the elevator. The only difference was that this time he was in his Houston police uniform with sidearm. The security officer on duty was Talita Braxton. She testified that appellant, in full uniform, hurriedly entered the building, bypassed her desk, approached the elevator, and told her to "[l]et me up to three." Because he was in uniform and she had "no reason to distrust a uniformed officer," she replied, "I will let you up." At that point, Braxton unlocked the elevators for appellant and allowed him to proceed.

### Standard of Review

In considering the legal sufficiency of the evidence, the court views the relevant evidence, both circumstantial and direct, in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). This, however, does not permit the court to sit as a thirteenth juror. *Moreno v. State*, 755 S.W.

3

2d 866, 867 (Tex. Crim. App. 1988). Rather, the reviewing court merely acts to safeguard due process and to ensure the rationality of the fact-finders verdict. *Teer v. State*, 923 S.W.2d 11, 17 (Tex. Crim. App. 1996).

Next, one is guilty of official oppression if he 1) is a public servant, 2) who intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity while knowing his conduct to be unlawful, and 3) while acting under color of his office or employment. TEX. PENAL CODE ANN. §39.03(a)(2) (Vernon 1994). Furthermore, a public servant acts under the color of his office or employment if he "acts or purports to act in an official capacity or takes advantage of such actual or purported capacity." *Id.* at §39.03(b).

### *Application of Standard*

a. *Acting under color of office or employment*

To the extent that appellant contends the state failed to prove that he acted under color of his office while attempting to gain access to Gonzalez, we find of record evidence illustrating that he thrice flashed his official badge to various security officers the previous day and that he appeared in full uniform and directed Braxton to give him access to the third floor. While it may be that appellant did not tell Braxton that he was a police officer, as he did the other security officers, words are not the only form of communication at work here. Wearing one's official police uniform with sidearm imparts to those who view him the information that he is a police officer. *DeMoss v. State*, 12 S.W.3d 553, 557 (Tex. App.–San Antonio 1999, pet ref'd). Couple that with his 1) previous attempts to gain access by informing security personnel that he was a Houston police officer while flashing

4

his official badge, and 2) directive to Braxton to allow him access to the third floor, we cannot but hold that ample evidence exists upon which a fact-finder could conclude, beyond reasonable doubt, that appellant acted or purported to act in his official capacity, or took advantage of that actual or purported capacity in demanding access to Gonzalez.[1] This is especially true given Braxton's own testimony that she permitted appellant to continue on because she had "no reason to distrust a uniformed officer . . . ."

### b. Deny or impede

As to the matter of denying or impeding Braxton from exercising the right or privilege to exclude him from the premises, appellant suggests that she allowed him to proceed based upon her own violation of policy as opposed to the belief that appellant was a Houston police officer operating under color of office. And, because she so acted, he allegedly neither denied or impeded her in the exercise of any right or privilege, and a finding to the contrary lacked legally sufficient evidentiary support. We disagree.

It may be that the facility hired off-duty police officers to roam the halls in uniform and policy required Braxton to screen all, including such off-duty officers, before allowing them to proceed. Yet, such individuals were hired because they were police officers capable of roaming in official police garb. In other words, they implicitly were hired by the facility because they could take advantage of their actual or purported capacity as a police

---

[1] To the extent that appellant relies on *Blasingame v. State*, 706 S.W.2d 682 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd), we find the case inapposite. There, the accused represented himself to be a vice officer while he was actually the local mayor. And, though the court held that the evidence was insufficient to support conviction, it did so because the accused represented himself to be a vice officer as opposed to the mayor. Simply put, the court held that the defendant must be a public servant acting under the color of "*his own* office or employment," not some other. *Id.* at 684 (emphasis added). Since Blasingame was not representing himself as the mayor, he could not be convicted of official oppression. Here, we do not have the appellant representing himself to be anything other than a police officer to gain access to Gonzalez. So, *Blasingame* is inapposite.

officer. And, it is because appellant appeared before Braxton as a police officer that she allowed him access. She told the court when asked if she would have permitted appellant to visit at that time, "[n]ot if he was in plainclothes, no sir." Again, she "had no reason to distrust a uniformed officer."

Simply put, appellant (while knowing he lacked legitimate access to Gonzalez) utilized the uniform and thereby took advantage of his actual or purported capacity as a police officer, to dupe Braxton into foregoing her right, privilege and authority to screen him. Indeed, she may have been wrong in ignoring policy and that may have also been a factor in her decision. Yet, we cannot close our eyes to the fact that she also relied upon appellant's appearance as a genuine police officer. Consequently, some evidence exists upon which a rational fact-finder could find beyond reasonable doubt, that appellant denied or impeded Braxton in the exercise of a right or privilege while acting under color of office.

Accordingly, we affirm the judgment of the trial court.


Brian Quinn
Justice

Do Not Publish.